UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JANE DOE,

Plaintiff,

– against –

BENJAMIN ZAREMSKI M.D., P.C., and DR.
BENJAMIN ZAREMSKI,

Defendants.

**OPINION AND ORDER**

21 Civ. 3187 (ER)

Ramos, D.J.:

Jane Doe, whose name is known but withheld due to the personal nature of her claims, brings this suit against her former doctor, Benjamin Zaremski, and his professional corporation, Benjamin Zaremski M.D., P.C., for alleged medical malpractice and offensive touching committed during a medical examination.  Doc. 8.  Pending before the Court is Doe's motion for leave to file a second amended complaint ("SAC") to add claims for gender discrimination under the New York City Human Rights Law, New York City Admin. Code § 8-107, *et seq.*, as amended ("NYCHRL").  Also pending before the Court is Doe's motion to compel the production of the file in the case *Rosenthal v. Zaremski*, No. 158865/2012, New York Supreme Court (the "*Rosenthal* file") in its entirety.  Docs. 42, 43.  For the following reasons, Doe's motion for leave to file her SAC is GRANTED, and her motion to compel production of the *Rosenthal* file is GRANTED.

I.      **BACKGROUND**

        **A.  Factual Background**

        In November 2019, in anticipation of a scheduled surgical procedure, Doe was advised that for health insurance purposes she needed both cardiac clearance and a separate clearance from a primary care provider.  Doc. 8 ¶ 17.  Doe made an appointment to see Dr. Zaremski on

November 21, 2019, for an examination to receive her cardiac clearance.  *Id*. ¶ 18.  The

cardiology examination included an EKG and an echocardiogram and was conducted by Dr.

Zaremski with a female assistant present in the examination room the entire time.  *Id*. ¶ 19.

Following the examination, Doe and Dr. Zaremski spoke in his office.  *Id*. ¶ 20.  Doe alleges that

during that conversation, Dr. Zaremski asked her about her sex life, which "did not seem

completely unusual because she was having difficulty conceiving and had scheduled the pending

operative procedure as an adjunct to fertility treatment."  *Id*.  As the questions continued,

however, Doe claims that Dr. Zaremski inquired "into orgasms, masturbation and other topics

which were clearly not germane and made [her] uncomfortable and desirous of ending the visit."

*Id*. ¶ 21.  Nevertheless, as Doe was leaving the reception area, Dr. Zaremski mentioned that he

was an internist and offered to provide her with the remaining primary care provider clearance.

*Id*. ¶ 22.  Doe agreed to the second examination "[n]ot wishing to go to the inconvenience of

scheduling another appointment with . . . the limited time she had left before the scheduled

procedure[.]"  *Id*. ¶ 23.

Doe alleges that she then proceeded into an examination room with Dr. Zaremski, this

time with no assistant present.  *Id*. ¶ 24.  There, Dr. Zaremski directed her to lie on the

examination table on her back "and to lift up her shirt and unbuckle her pants."  *Id*. ¶¶ 24–25.

"After palpating her abdominal area, [Dr. Zaremski] then lifted her underwear and put his

ungloved hand inside [her] pants, touching her vaginal labia with his fingers."  *Id*. ¶ 26.

Shocked, Doe then asked Dr. Zaremski why he had done so, and upon realizing he had "no

conceivable justification for palpating her genitalia, [she] justifiably felt vulnerable, violated and

traumatized."  *Id*. ¶¶ 28–29.  Doe alleges that Dr. Zaremski's touching of her genitalia had no

medical justification for her surgical clearance and has caused her substantial emotional anguish

and severely aggravated other pre-existing emotional and psychological issues from "previous trauma[.]" *Id.* ¶¶ 27, 30.

### B. Procedural History

Doe commenced this action on April 13, 2021.  Doc. 1.  Because the complaint contained Dr. Zaremski's address of residence, he requested that his residence be redacted.  Docs. 11 at 1, 21 at 2.  On May 6, 2021, Doe filed the identical document but with Dr. Zaremski's address redacted, denominating it an Amended Complaint and Jury Demand.  Doc. 8.  On May 21, 2021, both Defendants answered the Amended Complaint.  Doc. 9.

Pursuant to Rule 15 of the Federal Rules of Civil Procedure, Doe would regularly have had 21 days to submit an amended complaint upon receiving service of a responsive pleading. Fed. R. Civ. P. 15(a)(1)(B).  Notwithstanding, because an Amended Complaint was already on the docket, Doe thought it prudent to request Defendants' consent or the Court's approval. Doc. 21 at 2.  In response, the Defendants requested a copy of the proposed SAC.  *Id.*  On May 26, 2021, five days after receiving the Defendants' answers to the Amended Complaint, Doe emailed the Defendants a copy of the proposed SAC.  *Id.*  Because defense counsel was spending time with a family member dealing with medical issues, the Defendants took longer than Doe expected to respond.  *Id.*  Ultimately, the Defendants did not consent to the filing of the SAC.  *Id.*

On October 22, 2021, Doe filed her motion for leave to amend her complaint as well as the proposed SAC.  Docs. 20, 21, 22-1, Ex. 1.  On March 25, 2022, Doe also filed her letter motion to compel the *Rosenthal* file.  Docs. 42, 43.

### C. Proposed Second Amended Complaint

In her proposed SAC, Doe sets forth largely the same factual allegations as in the Amended Complaint.  The additional factual allegations are limited to Dr. Zaremski telling her

during her appointment that "she needed to be penetrated" and asking "if her significant other masturbated." Doc. 22-1, Ex. 1 ¶¶ 24, 27.

Doe's proposed SAC also includes three additional causes of action for sexual harassment and gender discrimination under §§ 8-107(4), (6), and (13) of the NYCHRL. *Id.* ¶ 2. Specifically, Doe adds a new proposed Count 10, alleging the "Defendants are a place or provider of public accommodation under the NYCHRL" who "engaged in an unlawful discriminatory practice . . . by discriminating against [Doe] based upon her gender," *id.* ¶¶ 129–30; Count 11, alleging the Defendants violated the NYCHRL by aiding and abetting the discriminatory and unlawful conduct, *id.* ¶ 134; and Count 12, alleging employer liability under the NYCHRL, *id.* ¶ 137.

Defendants argue that leave to amend should not be granted because Doe has failed to plead a violation of the NYCHRL. Specifically, Defendants argue that Doe's proposed amendments are futile, would be unduly prejudicial, and that the aiding and abetting claim lacks merit as a matter of law. *See* Doc. 28.

### D. The *Rosenthal* File

The *Rosenthal* file contains all of the documents in Mr. Rosenthal's possession from *Rosenthal v. Zaremski*,[1] a prior lawsuit in the Supreme Court of the State of New York, New York County, that was filed in 2012 and litigated for eight years. In that case, Theresa Rosenthal charged Dr. Zaremski with touching her in an intimate area during a medical examination without medical justification. Mrs. Rosenthal died in 2016 from causes unrelated to the claims in that matter and her husband continued the action after her death as the administrator of her estate. The case settled in June 2020, with both parties signing a nondisclosure agreement. At

---

[1] *Rosenthal v. Zaremski*, No. 158865/2012, New York Supreme Court.

the request of both parties, the clerk of the court was ordered to seal the court file; however, the order was not implemented and the file was not sealed.  According to Defendants, the court file has since been sealed.  *See* Doc. 19 at 1.

The nondisclosure agreement, which the Defendants initially did not produce in this litigation under a claim of confidentiality, was presented to the Court for *in camera* review.  The Defendants have since disclosed the document to Doe.  The nondisclosure agreement says, in relevant part:

> In addition, the parties hereby agree not to disclose any of the terms or conditions of this Agreement reached to resolve the pending litigation, including but not limited to the negotiations which culminated in this Agreement, to any third party. If contacted regarding this matter by any third party, the parties agree to make no comment other than to state:  "There has been a mutually satisfactory resolution." Notwithstanding the provisions of this paragraph, the parties may disclose the terms on this Agreement to any Court as necessary to effectuate or enforce this Agreement or to the party's legal advisors, accountants and spouses or as otherwise required by law.

Doc. 43, Ex. 1, at 2.

Doe now seeks to have Mr. Rosenthal produce the entirety of the *Rosenthal* file in his possession, which includes documents previously not publicly available in the state court file. Although Mr. Rosenthal and his counsel, Alexander Dudelson, Esq., consent to the production of the documents, Dr. Zaremski does not.  Nevertheless, Mr. Dudelson and Mr. Rosenthal have both indicated that they are hesitant about disclosing anything in the file without an order from the Court out of concern of otherwise violating the nondisclosure agreement.

## II.   LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure ("FRCP") 15(a)(2), a court should freely give leave to amend a complaint when justice so requires.  This is a liberal standard, and "a motion to amend should be denied only if the moving party has unduly delayed or acted in bad faith, the opposing party will be unfairly prejudiced if leave is granted, or the proposed

amendment is futile." *Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 452 (S.D.N.Y. 2016);

*see also Ithaca Capital Invs. I S.A. v. Trump Panama Hotel Mgmt. LLC*, 450 F. Supp. 3d 358,

369 (S.D.N.Y. 2020) ("The Second Circuit has stated that a court should allow leave to amend a

pleading unless the non-moving party can establish prejudice or bad faith").

## III.   DISCUSSION

### A.   Futility

#### 1.   *Standard for Futility*

The Second Circuit has held that leave to amend may be denied based on futility when it

is "beyond doubt that the plaintiff can prove no set of facts in support of [its] amended claims."

*Pangburn v. Culbertson*, 200 F.3d 65, 71 (2d Cir. 1999) (internal quotation marks omitted).  The

non-moving party bears the burden of establishing the amendment's futility.  *Ithaca Capital*, 450

F. Supp. 3d at 377.

To determine whether a proposed pleading is futile, courts analyze whether it would

withstand a motion to dismiss pursuant to FRCP 12(b)(6).  *Agerbrink*, 155 F. Supp. 3d at 456.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as

true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially

plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S.

at 556).  The plaintiff must allege sufficient facts to show "more than a sheer possibility that a

defendant had acted unlawfully."  *Id.*

The question on a motion to dismiss "is not whether a plaintiff will ultimately prevail but

whether the claimant is entitled to offer evidence to support the claims."  *Sikhs for Justice v.

Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012) (quoting *Village Pond, Inc. v. Town of Darien*,

56 F.3d 375, 378 (2d Cir. 1995)).  "[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits" or "weigh[ing] the evidence that might be offered to support it." *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (internal quotation marks and citations omitted).  Thus, when ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor.  *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014).  Accordingly, when considering a motion to amend a pleading, a "court must accept as true all well-pleaded facts and draw all reasonable inferences in the moving party's favor." *Agerbrink*, 155 F. Supp. 3d at 456.

   *2.  NYCHRL § 8-107(4)*

   NYCHRL § 8-107(4)(a) says, in relevant part, that it is an unlawful discriminatory practice "for any person who is the owner, . . . proprietor, manager, . . . agent or employee of any place or provider of public accommodation" to "refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, . . . services, facilities or privileges of the place or provider of public accommodation" because of "any person's actual or perceived . . . gender . . . directly or indirectly."  NYCHRL §§ 8-107(4)– (4)(1)(a).  The legislature has made clear that these provisions are to be construed broadly.  *See* NYCHRL § 8-130(c).

   The Defendants do not dispute that Dr. Zaremski's office is a place of public accommodation.  Doe thus need only allege facts that allow for the reasonable inference that Dr. Zaremski denied her the full and equal enjoyment, on equal terms and conditions, of any of the services or privileges of his office due to her gender.  *See* NYCHRL §§ 8-107(4)–(4)(1)(a).

a. The "Less Well" Standard

Doe argues that she was treated "less well" as Dr. Zaremski's patient at his office and therefore the three counts of discrimination under the NYCHRL are appropriate. Doe further argues that the less well standard applies to her causes of action. Specifically, Doe argues that in 2009, the New York Appellate Division decided *Williams v. New York City Housing Auth.*, 61 A.D.3d 62 (N.Y. App. Div. 2009),[2] and in 2016, the New York City legislature amended NYCHRL § 8-130 to state that *Williams* correctly developed a legal doctrine that reflects the broad and remedial purposes of the entire title. From this, Doe concludes that all causes of action under the NYCHRL should be construed under the less well standard, not just employment discrimination cases under § 8-107(1).

The Defendants argue that Doe conflates the law between employment discrimination and public accommodations because the less well standard is intended for employment discrimination cases, not public accommodation ones. The Defendants contend that cases binding on the Court establish that the less well standard applies only to claims of employment discrimination.

NYCHRL § 8-130(a) provides, in relevant part, that "[t]he provisions of this title shall be construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof, regardless of whether federal or New York state civil and human rights laws, including those

---

[2] In *Williams*, an employment discrimination case, the Appellate Division found that the plaintiff, an employee of defendant New York City Housing Authority, failed to state a claim for gender discrimination under NYCHRL § 8-107(1) and § 8-107(7). *Williams v. New York City Housing Auth.*, 61 A.D.3d 62, 73–78 (N.Y. App. Div. 2009). The court reasoned, however, that given NYCHRL § 8-107's uniquely broad and remedial purposes, the more restrictive "severe and pervasive" test generally applied to state and federal sexual harassment claims is not applicable to gender-based discrimination claims under the NYCHRL. *Id.* Instead, liability should be determined by "whether the plaintiff has proven by a preponderance of the evidence that she has been treated *less well* than other employees because of her gender." *Id.* (emphasis added).

laws with provisions worded comparably to provisions of this title, have been so construed." NYCHRL § 8-130(c) provides, in relevant part, that "[c]ases that have correctly understood and analyzed the liberal construction requirement of subdivision (a) of this section and that have developed legal doctrines accordingly that reflect the broad and remedial purposes of *this title* include . . . *Williams v. New York City Housing Authority*, 61 A.D.3d 62 (N.Y. App. Div. 2009)" (emphasis added).

The New York City legislature's 2016 amendment of NYCHRL § 8-130 adopts the reasoning in *Williams* that the broad and remedial purposes of the entire title apply to more than employment discrimination under § 8-107(1). Accordingly, the statutory language suggests that the legislature did not intend to limit the less well standard to employment discrimination cases. Following the amendment, courts have applied the less well standard in circumstances outside of employment discrimination.

For example, in *Vasquez v. Manhattan Physician Grp.*, the New York Supreme Court analyzed whether the less well standard for employment discrimination articulated in *Williams* also applies to places of public accommodation. No. 153937/14, 2018 WL 587135, at *4 (N.Y. Sup. Ct. Jan. 29, 2018). In that case, as here, a gynecologist was charged with gender discrimination under NYCHRL § 8-107 for touching the plaintiff in ways that were not medically required. *Id.* at *3. The court reasoned that the language of NYCHRL § 8-107(1) is broadly worded like that of § 8-107(4), concluding that "[w]hile this appears to be a novel question of law, there is no reason why [the *Williams* court]'s formulation regarding disparate treatment does not apply equally to public accommodations" and went on to apply the less well standard to the facts of the case. *Id.* at *4. The court ultimately refused to dismiss the plaintiff's cause of action for gender discrimination under NYCHRL § 8-107(4). *Id.* at *6.

In *Ludwig's Drug Store, Inc. v. Forest City Enterprises, Inc.*, the Eastern District of New York also analyzed a claim brought under the NYCHRL for discrimination in a place of public accommodation.  No. 13 Civ. 6045 (MKB), 2016 WL 915102, at *19 (E.D.N.Y. Mar. 4, 2016). The court there stated that the NYCHRL's provisions should be construed "broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible."  *Id.* (citing *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013) (internal quotation marks omitted)).  Although the court did not use the term "less well," it reasoned that to "state a claim for discrimination under [§ 8-107(4) of] the NYCHRL, a plaintiff must only show *differential treatment* of any degree based on a discriminatory motive . . . ."  *Id.* (citing *Gorokhovsky v. New York City Housing Auth.*, 552 F. App'x 100, 102 (2d Cir. 2014)) (emphasis added).

In *Novio v. New York Academy of Art*, the Southern District of New York applied the less well standard to a claim brought under the NYCHRL for gender discrimination in an educational setting.  286 F. Supp. 3d 566, 583–84 (S.D.N.Y. 2017).  The court reasoned that while the "NYCHRL has traditionally been applied in the employment context, there is little reason to refrain from applying it to the educational context[.]"  *Id.* at *583, n.9.  From this, the court concluded that, under the NYCHRL, a plaintiff need only show that they "ha[ve] been treated less well than other [students] because of a protected characteristic."  *Id.* at *583 (internal quotation marks and citation omitted).  Although *Novio* resembled an employment discrimination case because it involved a hostile work environment, it was sex discrimination brought by a student in an educational setting and the court applied the less well standard.  *Id.* at *583–84.

In *Van Vorst v. Lutheran Healthcare*, the Eastern District of New York again applied the less well standard to claims brought under the NYCHRL for discrimination in a place of public

accommodation and the Second Circuit affirmed.  No. 15 Civ. 1667 (ERK) (PK), 2020 WL

7343799, at *6 (E.D.N.Y. Dec. 14, 2020), *aff'd*, No. 21-4, 2021 WL 6101474 (2d Cir. Dec. 22,

2021) (summary order).  In that case, the plaintiffs were deaf individuals who alleged that the

defendant hospital failed to provide them with accommodations during visits for medical care, as

required under the NYCHRL.  *Van Vorst*, 2021 WL 6101474, at *1.  The plaintiffs argued that

they were treated "less well than hearing individuals" because they were not provided with

American Sign Language interpreters during their visits.  *Id.*  Although the district court did not

decisively state whether the less well standard governed their claims, it still analyzed the

plaintiffs' claims under the less well standard before finding that their claims lacked merit.  *See*

*Van Vorst*, 2020 WL 7343799, at *6–7.  On appeal, the Second Circuit noted that the plaintiffs

had invoked, within a single cause of action, both NYCHRL § 8-107(15), which requires covered

entities to provide reasonable accommodations, and § 8-107(4), which prohibits disparate

treatment of individuals with disabilities.  *Van Vorst*, 2021 WL 6101474, at *1, n.3.  The Second

Circuit affirmed, noting that because neither party argued that the two causes of action required

application of different standards, it would not address the issue.  *See id.*

     In *Petty v. Law Office of Robert P. Santoriella, P.C.*, the New York Appellate Division

found that a plaintiff had properly established her claims for discrimination in a place of public

accommodation under NYCHRL § 8-107(4).  No. 155468/2015, 2020 WL 7011753 (N.Y. Sup.

Ct. Nov. 25, 2020), *rev'd*, 200 A.D.3d 621, 160 N.Y.S.3d 228, 230 (N.Y. App. Div. 2021).  In that

case, the plaintiff charged her attorney with gender discrimination after he asked for sexually

explicit photographs and videos—under the guise that they were relevant to her legal claims—

and shared them without her consent.  *Petty*, 2020 WL 7011753, at *1.  Specifically, the plaintiff

sued pursuant to NYCHRL § 8-107(4) even though they had only communicated via phone calls

and text messages and she had never been to the defendant's office.  *Id.*  Although the New York
Supreme Court dismissed the case, finding that the plaintiff failed to state a claim under
NYCHRL § 8-107(4) because she had not sufficiently established she had been denied the "full
and equal enjoyment" of any "of the [law firm's] accommodations" as she had never been to the
defendant's office, the Appellate Division disagreed and reasoned the plaintiff's allegations were
sufficient to avoid dismissal of the complaint.  *Petty*, 160 N.Y.S.3d at 230.

Each of the seven cases[3] cited by the Defendants are merely examples of employment
discrimination cases under the NYCHRL in which the court applied the less well standard.  The
cases do not imply that the less well standard applies only to employment discrimination cases.

The Court finds that the less well standard may apply to Doe's additional causes of action
under the NYCHRL.

   b.  <u>Conclusion</u>

In her proposed SAC, Doe alleges that Dr. Zaremski conducted the second examination
in a manner that violated the relevant medical community requirement that there be a medical
assistant present.  Doc. 22-1, Ex. 1 ¶¶ 33, 95.  She states that Dr. Zaremski asked unnecessary,
intrusive questions and used his ungloved fingers to touch her genitalia with no conceivable
medical justification.  *Id.* ¶ 34.  Accepting as true all well-pleaded facts and drawing all
reasonable inferences her favor, Doe's proposed SAC adequately states a claim under the
NYCHRL for unlawful discriminatory practices in a place of public accommodation because it is

---

[3] The seven cases cited by the Defendants are:  *Bohlinger v. Abbott Labs. Inc.*, 843 F. App'x 374 (2d Cir. 2021)
(summary order), *Nguedi v. Fed. Reserve Bank of New York*, 813 F. App'x 616 (2d Cir. 2020) (summary order),
*Emengo v. Stark*, 774 F. App'x 26 (2d Cir. 2019) (summary order), *Lowe v. Mount Sinai Health Sys., Inc.*, 764 F.
App'x 120 (2d Cir. 2019) (summary order), *Shojae v. Harlem Hosp. Ctr., New York City Health and Hosps. Corp.*,
764 F. App'x 113 (2d Cir. 2019) (summary order), *Forrester v. Corizon Health, Inc.*, 752 F. App'x 64 (2d Cir. 2018)
(summary order), and *Eng v. City of New York*, 715 F. App'x 49 (2d Cir. 2017) (summary order).

reasonable to infer that Dr. Zaremski treated Doe less well because she is a woman.  *Agerbrink*,
155 F. Supp. 3d at 456.  Doe's Count 10 is therefore not futile.

   3.  *NYCHRL § 8-107(6)*

   Doe argues that her claim for aiding and abetting under NYCHRL § 8-107(6) should
proceed because it sufficiently alleges that Dr. Zaremski is the owner of his private practice, a
corporate entity, he was the main and sole harasser, and that he used his position of authority to
subject her to discriminatory acts.

   The Defendants contend that Doe has failed to state a claim for aiding and abetting
because an individual cannot aid or abet his own conduct.

   NYCHRL § 8-107(6) provides that, "[i]t shall be an unlawful discriminatory practice for
any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this
chapter, or to attempt to do so."  Moreover, it is settled in the Second Circuit that "a defendant
who actually participates in the conduct giving rise to a discrimination claim may be held
personally liable under the HRL."  *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995); *see
also Rojas v. Roman Cath. Diocese of Rochester*, 660 F.3d 98, 107 n.10 (2d Cir. 2011).

   At issue here, then, is whether Dr. Zaremski may be held liable under NYCHRL § 8-
107(6) for aiding and abetting an unlawful discriminatory practice of the defendant corporate
entity even though his conduct serves as the sole predicate of the corporate entity's liability.

   In *Tomka*, the Second Circuit found that the district court erred in dismissing a plaintiff's
cause of action for aiding and abetting against three defendants who allegedly participated in
discriminatory conduct.  66 F.3d at 1317.  In that case, the court held that a defendant "must
actually participate in the conduct giving rise to a discrimination claim" for aiding and abetting
actions under the NYSHRL.  *Id.*  Although *Tomka* involved three defendants, courts have since
interpreted it to signify that an individual may be liable for aiding and abetting the discriminatory

13

conduct of their employer even when their conduct is the sole predicate of their employer's liability.

For example, in *Salvatore v. KLM Royal Dutch Airlines*, the court denied a motion to dismiss a claim for aiding and abetting pursuant to the NYSHRL even though the defendant was "the sole KLM employee alleged to have engaged in the discriminatory conduct."  No. 98 Civ. 2450 (LAP), 1999 WL 796172, at *8 (S.D.N.Y. Sept. 30, 1999).  In *Perks v. Town of Huntington*, the court similarly concluded that the plaintiff had adequately alleged that the defendant could be held liable as an aider and abettor as a "municipal policymaker" even though the defendant was the sole alleged perpetrator of the discriminatory conduct.  96 F. Supp. 2d 222, 227–28 (E.D.N.Y. 2000).

A few years later, the court addressed a similar issue in *Lewis v. Triborough Bridge & Tunnel Auth.*, where the defendant was the sole perpetrator of the discriminatory conduct and the plaintiff alleged that the defendant aided and abetted his employer's "condonation of his own conduct."  No. 97 Civ. 607 (PKL), 2001 WL 46986, at *1–2 (S.D.N.Y. Jan. 18, 2001), *aff'd*, 31 F. App'x 746 (2d Cir. 2002).  In that case, the court found in favor of the plaintiff, reasoning that "[d]espite the circularity of [the plaintiff]'s argument, the majority of courts in this Circuit have followed *Tomka's* guidance and held that an individual can be subject to liability . . . for aiding and abetting his own discriminatory conduct."  *Id.* at *2.  The Second Circuit affirmed.  And, more recently in *Maher v. Alliance Mortg. Banking Corp.*, the court wrote that "until the Second Circuit revisits this issue, an individual may be liable under [the NYSHRL] for aiding and abetting an unlawful discriminatory practice of his employer even where his conduct serves as the sole predicate for the employer's liability."  650 F. Supp. 2d 249, 262–63 (E.D.N.Y. 2009) (citing *Lewis*, 2001 WL 46986, at *2).

Here, Dr. Zaremski "actually participate[d] in the conduct giving rise to [the] discrimination claim" for aiding and abetting. *Tomka*, 66 F.3d at 1317. Moreover, although he is the owner of his private practice, he is also an employee of that corporate entity. Accordingly, Dr. Zaremski may be liable under NYCHRL § 8-107(6) for aiding and abetting an unlawful discriminatory practice of the defendant corporate entity even though his conduct serves as the sole predicate of the corporate entity's liability. This Court finds that Doe's Count 11 cause of action for aiding and abetting is not futile.

### 4. *NYCHRL § 8-107(13)*

NYCHRL § 8-107(13) provides, in relevant part, that an "employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of *this section* other than subdivisions (1) and (2) of this section." NYCHRL § 8-107(13) (emphasis added). Because Doe properly states a claim in her proposed SAC for Counts 10 and 11, which are under subdivisions (4) and (6) of § 8-107, her claim under NYCHRL § 8-107(13) is properly alleged and is not futile.

### B. Unfair Prejudice

Although prejudice to the opposing party has been described as the "most important" reason for denying a motion to amend, "only undue prejudice warrants denial of leave to amend." *Agerbrink*, 155 F. Supp. 3d at 454 (internal quotation marks, citations, and emphasis omitted). Pursuant to FRCP 15(a), unfair prejudice exists "where the opposing party would experience undue difficulty in defending a lawsuit because of a change of tactics or theories on the part of the movant." *Pasternack v. Lab. Corp. of Am.*, 892 F. Supp. 2d 540, 549 (S.D.N.Y. 2012) (citing *Henry v. Murphy*, No. M-82 (JFK), 2002 WL 24307, at *2 (S.D.N.Y. Jan. 8, 2002)). For example, undue prejudice arises when an amendment comes "on the eve of trial and would result in new problems of proof." *Ruotolo v. City of New York*, 514 F.3d 184, 192 (2d Cir. 2008)

(quoting *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981)).  Amendment

may also be unfairly prejudicial where, among other things, it would "require the opponent to

expend significant additional resources to conduct discovery and prepare for trial or significantly

delay the resolution of the dispute." *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*,

626 F.3d 699, 725–26 (2d Cir. 2010) (citing *Fluor Corp.*, 654 F.2d at 856) (internal quotation

marks omitted).  However, "[t]hat a proposed amendment would necessitate additional discovery

or merely the expenditure of money and time, alone, is not a sufficient basis for denying leave to

amend." *Sec. & Exch. Comm'n v. Rio Tinto plc*, No. 17 Civ. 7994 (AT) (DF), 2020 WL 2504008,

at *7 (S.D.N.Y. Mar. 9, 2020), *objections overruled*, No. 17 Civ. 7994 (AT) (DCF), 2021 WL

807020 (S.D.N.Y. Mar. 3, 2021) (citation omitted); *see also United States v. Cont'l Illinois Nat'l

Bank & Trust Co. of Chicago*, 889 F.2d 1248, 1255 (2d Cir. 1989).  This inquiry involves a

balancing process, weighing any potential prejudice to the opposing party against the prejudice

that the moving party would experience if the amendment were denied.  *Agerbrink*, 155 F. Supp.

3d at 454 (internal quotation marks and citation omitted).  "The party opposing the motion for

leave to amend has the burden of establishing that an amendment would be prejudicial."

*Pasternack*, 892 F. Supp. 2d at 550 (internal quotation marks and citation omitted).

Here, the Defendants contend that they would be prejudiced by the additional proposed

causes of action because Doe must establish that Dr. Zaremski's actions were actually driven by

discriminatory intent through the use of a comparator.[4]  From this, the Defendants conclude that

---

[4] The Defendants rely on three cases to support this assertion:  *Lue v. JPMorgan Chase & Co.*, No. 16 Civ. 3207
(AJN), 2018 WL 1583295 (S.D.N.Y. Mar. 27, 2018), *aff'd*, 768 F. App'x 7 (2d Cir. 2019); *Beverley v. New York City
Health & Hosps. Corp.*, No. 18 Civ. 8486 (ER), 2020 WL 5750828 (S.D.N.Y. Sept. 25, 2020); *Shipkevich v. New
York Presbyterian Hosp./Columbia Univ. Med. Ctr.*, No. 16 Civ. 9630 (RA) (SDA), 2020 WL 6561802 (S.D.N.Y.
July 22, 2020), *report and recommendation adopted sub nom. Shipkevich v. New York & Presbyterian Hosp.*, No. 16
Civ. 9630 (RA), 2020 WL 5796202 (S.D.N.Y. Sept. 29, 2020).

Doe would require the private medical records from all of Dr. Zaremski's patients, for all genders, to show he treated similarly situated male patients differently. These disclosures of confidential patient information would, in turn, substantially prejudice the Defendants, and the case would be prolonged into perpetuity.

Doe argues that, because a motion for leave to amend the complaint under FRCP 15 is evaluated under the same standard as a motion to dismiss, she need only provide plausible support for a minimal inference of discriminatory motivation. Doe correctly states that a plaintiff is not required to identify or plead the existence of a comparator to survive a motion to dismiss. *See, e.g.*, *Ibrahim v. Fid. Brokerage Servs. LLC*, No. 19 Civ. 3821 (VEC), 2020 WL 107104, at *4 (S.D.N.Y. Jan. 9, 2020) ("Even absent the specific identification of a male comparator, th[e] factual allegations adequately support a plausible inference that Plaintiff's supervisors would not have treated a male the same way and that Plaintiff was treated 'less well' because of her gender"); *Wilson v. JPMorgan Chase Bank, N.A.*, No. 20 Civ. 4558 (JMF), 2021 WL 5179914, at *5 (S.D.N.Y. Nov. 8, 2021) ("A discriminatory motive can be shown either by pleading direct evidence of discrimination . . . *or* by pleading facts showing that . . . comparators were treated better than [the plaintiff] was") (emphasis added). Moreover, Doe correctly argues that the comparator requirement cited by the Defendants does not apply at this juncture because those cases pertained to different procedural postures or were not claims brought under the NYCHRL. *See Lue*, 2018 WL 1583295, at *1 (on defendants' motion for summary judgment against causes of action brought under Title VII and 42 U.S.C. § 1981); *Beverley*, 2020 WL 5750828, at *1 (on plaintiff's motion for reconsideration filed after the entry of judgment); *Shipkevich*, 2020 WL 6561802, at *1 (on defendants' motion for summary judgment).

To the extent that Doe's NYCHRL claims may require additional discovery, that is not a sufficient basis for denying leave to amend, especially at this early stage. The Court therefore finds that Doe's proposed SAC does not unfairly prejudice the Defendants.

### C. Production of the *Rosenthal* File

On March 3, 2022, the Court ordered the parties to submit briefing on the Court's authority to issue an order directing production of documents protected under a nondisclosure agreement where the representatives for only one party have consented to production. Doc. 40. Neither party provided adequate briefing on this point of law.

Doe instead argues that the nondisclosure agreement protects only the terms and conditions of the settlement, which the Defendants have already disclosed, as well as the "negotiations" leading up to it, but certainly does not protect any of the remaining documents in the case. From this, she concludes that the agreement does not prevent either party to the *Rosenthal* case from sharing the underlying documentation with anyone.

Moreover, Doe argues that the Defendants cannot claim work product protection with respect to Mr. Rosenthal's papers because such privilege is waived by production to an adversary in litigation. She also argues that the information requested is necessary for the prosecution of her claims, and FRCP 26 allows for the discovery of this kind of nonprivileged information. Likewise, she argues that because the agreement states, " . . . the parties may disclose the terms on this Agreement to any Court . . . as otherwise required by law," that it carves out an exception to nondisclosure pursuant to a court order as in this instance. Doc. 43-1, Ex. 1, at 2. Finally, Doe argues that, because full performance of the agreement is not possible within one year, and the agreement itself was not signed by Mr. Rosenthal, which means that it was not "subscribed by the party to be charged"—as required by the New York statute of frauds—the nondisclosure agreement is void.

The Defendants do not refute Doe's arguments nor address the Court's authority to issue an order directing production of documents protected under a nondisclosure agreement where only one party has consented to production (as they were directed to brief).  Instead, they respond with two brief statements.  First, Defendants claim that "[b]ased off our conversations with Mr. Rosenthal's attorney, and implied just by the fact that plaintiff is making the instant application, all parties other than plaintiff's counsel are abiding by the confidentiality agreement, and will not turn over any files without a court order."  Doc. 44 at 2.  Second, they argue that any order by the Court directing disclosure must necessarily direct disclosure of the documents to the Defendants as well.  Doe does not object to disclosing the documents to the Defendants.

The nondisclosure agreement provides, in relevant part, that the parties "agree not to disclose any of the terms or conditions *of this Agreement* reached to resolve the pending litigation, including but not limited to the negotiations which culminated in this Agreement[.]" Doc. 43-1, Ex. 1, at 2 (emphasis added).  However, the agreement also states that "[i]f contacted regarding this matter by any third party, the parties agree to make no comment other than to state: 'There has been a mutually satisfactory resolution.'" *Id.*  By using "this matter" in the latter sentence, as opposed to using "this Agreement" as in the previous sentence, the parties appear to have intended to encompass more than merely the instant settlement agreement.  The Court therefore interprets the nondisclosure agreement as applying to the *Rosenthal v. Zaremski* matter generally and not only as protecting the settlement agreement and the preceding negotiations as plaintiffs urge.

Notwithstanding, nondisclosure agreements do not preclude discovery in federal litigation.  *See Hoffman v. Sbarro, Inc.*, No. 97 Civ. 4484 (SS), 1997 WL 736703, at *1 (S.D.N.Y. Nov. 26, 1997) (citing *Chambers v. Capital Cities/ABC*, 159 F.R.D. 441, 442 (S.D.N.Y. 1995)).

19

Instead, protective orders can be used to maintain confidentiality of information disclosed in discovery.  *See, e.g.*, *Perez v. Byrnes*, No. 15 Civ. 93 (FJS) (DJS), 2016 WL 11763718, at *1–2 (N.D.N.Y. Feb. 24, 2016).  For example, in *Perez*, the defendant asserted that several of the plaintiff's discovery requests would require it to produce documents protected under a nondisclosure agreement.  *Id.*  The court resolved the issue by ordering the parties to enter into a protective order which would allow the production of responsive documents protected by the nondisclosure agreement.  *Id.*

Other courts have come to the same conclusion.  For example, in *Shvartser v. Lekser*, the court found that as "a general rule, 'confidentiality agreements will not stand as a barrier to discovery between two parties in litigation.'"  270 F. Supp. 3d 96, 98 (D.D.C. 2017) (citing cases in the Ninth and Fifth Circuits); *see also Micron Tech., Inc. v. Factory Mut. Ins. Co.*, No. 3:18 Civ. 7689 (LB), 2022 WL 1687156, at *1 (N.D. Cal. May 26, 2022) ("[P]arties cannot simply vitiate their discovery obligations by asserting third party privacy rights based on NDAs") (citing *BLK Enterprises, LLC v. Unix Packaging, Inc.*, No. 18 Civ. 2151 (SVW) (KS), 2018 WL 5993841, at *4 (C.D. Cal. Sept. 26, 2018)).  In fact, "courts commonly require parties to produce confidential documents; the confidentiality of those documents is protected not by denying access to them, but by entering a protective order to cover them."  *United States v. Newman*, 531 F. Supp. 3d 181, 193 (D.D.C. 2021); *see also Shvartser*, 270 F. Supp. 3d at 98 (citing case from the Eighth Circuit).

A protective order was entered in this case on January 31, 2022 to protect the confidentiality of sensitive discovery materials.  Doc. 36.  The Court therefore finds that the *Rosenthal* file in Mr. Rosenthal's possession should be produced in its entirety and Doe is ordered to provide the Defendants with a copy of all of the materials received within two weeks.

### D. Mrs. Rosenthal's Medical Records

Finally, the Defendants argue in their letter dated April 8, 2022, that any of Mrs. Rosenthal's medical records from providers other than Dr. Zaremski are not subject to production because they were retained pursuant to HIPAA authorizations and that patient medical records are privileged; therefore, they cannot be disclosed without a waiver from the patient or patient's representative. Notwithstanding, Doe correctly asserts that this issue was resolved by the Court in its Order dated March 3, 2022, which itself was submitted to the Court as a joint letter of the parties. Doc. 40. That Order states, in relevant part:

> The Plaintiff has submitted HIPAA compliance authorizations to Defendants for all of Mrs. Rosenthals' medical records which are in the Defendants' or their agents' possession. To the extent Defendants wish to use any of Ms. Rosenthal's records in this case which were generated by any other health care provider other than Dr. Zeremski, they shall produce the same within 60 days.

The Court therefore orders the Defendants to produce all of Mrs. Rosenthal's medical records that they have in their or their agents' possession, whether they are records from Dr. Zaremski or not.

## IV.   CONCLUSION

For the foregoing reasons, Doe's motion for leave to amend her complaint is GRANTED, and her motion to compel production of the *Rosenthal* file is GRANTED. The amended complaint shall be filed by August 27, 2022. The Clerk of the Court is respectfully directed to terminate the motions, Docs. 20, 42, and 43.

It is SO ORDERED.

Dated:   July 27, 2022
   New York, New York

              Edgardo Ramos, U.S.D.J.