**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
"JANE DOE" (A Patient of Defendants'
Whose Name is Known but Withheld Due to                   Case Number: 21-cv-03187
The Personal Nature of her Claims),

                                Plaintiffs,

        -v-                                              SECOND AMENDED COMPLAINT
                                                              AND JURY DEMAND
BENJAMIN ZAREMSKI M.D., P.C.
and Dr. BENJAMIN ZAREMSKI,

                                Defendants.
-------------------------------------------------------X

        Plaintiff, "JANE DOE" ("Ms. Doe" or "Plaintiff") by and through her attorneys, The Law

Offices of William Cafaro, as and for her First Amended Complaint against BENJAMIN

ZAREMSKI M.D., P.C. (hereinafter referred to as the "Corporation") and Dr. BENJAMIN

ZAREMSKI (hereinafter referred to as the "Doctor") (referred to collectively as the "Defendants'),

alleges as follows as and for her Complaint as against the Defendants, and each of them:


                                *NATURE OF THE CASE*

        1.      This is an action for medical malpractice and offensive touching, committed under

the guise of conducting a medical examination, consisting of the gratuitous palpation of Plaintiff's

vaginal labia, upon information and belief, for the Doctor's sexual gratification. It is alleged that

in the circumstances, to the extent any consent existed or may be found, it was fraudulently induced

by the Doctor.

        2.      Further, this is an action for severe sexual harassment and gender discrimination

insofar as Defendants treated Ms. Doe less well in a place of public accommodation by reason of

her gender under the New York City Human Rights Law, NYC Admin Code § 8-107, et seq., as amended.

*THE PARTIES*

3. Ms. Doe is an adult female individual residing in East Orange, New Jersey, within the County of Essex.

4. The Corporation is, and at all times herein pertinent was, a domestic professional corporation which operates as a medical office.

5. The Corporation has its principal place of business at 510 East 80th Street, New York, New York 10075, and has designated New York County as the county where its principal office is located with the Secretary of State.

6. Upon information and belief, the Doctor is, and at all times herein pertinent was, the sole principal, director and shareholder of the Corporation.

7. Upon information and belief, the Doctor is, and at all times herein pertinent was, the owner of all of the beneficial interest of the Corporation.

8. Upon information and belief, at all times herein pertinent, the Doctor was solely responsible for making substantially all of the business decisions for the Corporation.

9. Upon information and belief, at all times herein pertinent, the Doctor was solely responsible for making all the hiring, firing and retention decisions, and the only individual with authority to designate which physicians would or would not be permitted to practice medicine on behalf of the Corporation.

10. The Doctor is an individual residing within the County, the City and the State of New York.

2

11.     The Doctor is an individual who is duly licensed to practice medicine in the State of New York.

12.     At all times herein pertinent, the Doctor was, and still is, board certified in Internal Medicine.

13.     At all times herein pertinent, the Doctor held himself out to the public as a physician specializing in the practice of Cardiology.

14.     At all times herein pertinent, the Doctor maintained, and still maintains, his principal place of business at 510 East 80th Street, New York, New York 10075.

15.     At all times herein pertinent, the Defendants are a place or provider of public accommodation under the NYCHRL.

16.     As stated in more detail below, the Doctor actually participated in the conducted giving rise to the claims of discrimination alleged herein and is liable as an aider and abettor of unlawful conduct.

## *JURISDICTION AND VENUE*

17.     Jurisdiction is based upon 28 U.S.C. § 1332(a)(1) insofar as the Plaintiff is a citizen of the State of New Jersey, and each of the Defendants are citizens of the State of New York for the purposes of diversity jurisdiction.

18.     The amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

19.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(1), insofar as all of the Defendants can be found here; and § 1391(b)(2), insofar as a substantial part of the conduct giving rise to the claims brought herein occurred within this judicial district.

*FACTUAL ALLEGATIONS*

20.    In anticipation of a scheduled surgical procedure, the Plaintiff was advised that she needed a cardiac clearance as well as a clearance from a primary care provider.

21.    In order to get the cardiac clearance, the Plaintiff scheduled an appointment with the Doctor, and went to his office on 510 East 80th Street on November 21, 2019 (the "Date of Occurrence").

22.    The cardiology examination, which included an EKG and an echocardiogram, was conducted with the Doctor's female assistant in the exam room the entire time.

23.    After the examination, while the Doctor was speaking to the Plaintiff in his office, he asked about Plaintiff's sex life, which, at first, did not seem completely unusual because she was having difficulty conceiving and had scheduled the pending operative procedure as an adjunct to fertility treatment.

24.    However, as these questions continued in this vein, the Doctor told her that "she needed to be penetrated".

25.    The Doctor also made inquiries into her orgasms.

26.    The Doctor asked her if she masturbated.

27.    The Doctor went on to ask if her significant other masturbated.

28.    Due to topics which were clearly not germane, Plaintiff became uncomfortable and wanted to leave the office.

29.    As Plaintiff was leaving the reception area, the Doctor commented to her that he was also an internist, so he could get the necessary blood work done for her and give her the remaining surgical clearance she needed by the following day.

4

30.     Not wishing to go to the inconvenience of scheduling another appointment with another doctor within the limited time she had left before the scheduled procedure, Plaintiff agreed to a second examination.

31.     The Doctor then directed Plaintiff to go into an examination room and entered with no assistant present.

32.     The Doctor directed the Plaintiff to lie down supine on the examination table and to lift up her shirt and unbuckle her pants.

33.     After palpating her abdominal area, the Doctor then lifted her underwear and put his ungloved hand inside the Plaintiff's pants, touching her vaginal labia with his fingers.

34.     The Doctor's touching of the Plaintiff's genitalia had no conceivable medical justification.

35.     Shocked, the Plaintiff asked why the Doctor had done that.

36.     Realizing that the Doctor had no conceivable justification for palpating her genitalia, the Plaintiff justifiably felt vulnerable, violated and traumatized.

37.     The Plaintiff has suffered and continues to suffer substantial emotional anguish as a result of this inappropriate touching, and this event has severely aggravated and exacerbated the anxiety and other pre-existing emotional and/or psychological issues from previous trauma to which the Plaintiff has been subjected.

38.     Plaintiff was treated less well than other patients because of her gender in violation of the NYCHRL.

39.     Defendants would not have treated the Plaintiff in the above referenced manner if Plaintiff was male.

## AS AND FOR A FIRST CAUSE OF ACTION
### AGAINST DR. BENJAMIN ZAREMSKI AND
### BENJAMIN ZAREMSKI M.D., P.C.
### COMMON LAW BATTERY

40.     Plaintiff incorporates all the preceding allegations of this Complaint with the same force and effect as if fully set forth at length.

41.     On the Date of Occurrence, the Doctor intentionally touched the Plaintiff's vaginal labia with an ungloved hand.

42.     On the Date of Occurrence, the Doctor palpated the Plaintiff's vaginal labia.

43.     The touching was without her consent.

44.     The bodily contact was offensive to the Plaintiff, and would have been objectively offensive to any reasonable person.

45.     Upon information and belief, to the extent the acts committed were intentional on the part of Dr. Zeremski, they were also intentional on the part of the Corporation.

46.     Upon information and belief, at all times herein pertinent, the Doctor was acting on behalf of the Corporation, within the scope of his employment and/or agency for the corporation.

47.     Upon information and belief, the Corporation ratified the conduct in question by failing and neglecting to report it to the Office of Professional Misconduct, and upon further information and belief, submitted billing for examination(s).

48.     The Corporation is therefore vicariously liable for the conduct of the Doctor.

49.     As a proximate result of the said touching, the Plaintiff has suffered severe emotional and psychological distress, and certain pre-existing anxieties and other psychological pathologies she suffered from have been significantly exacerbated and aggravated.

### AS AND FOR A SECOND CAUSE OF ACTION
### AGAINST DR. BENJAMIN ZAREMSKI AND
### BENJAMIN ZAREMSKI M.D., P.C.
### <u>COMMON LAW FRAUD</u>

50. Plaintiff incorporates all the preceding allegations of this Complaint with the same force and effect as if fully set forth at length.

51. Knowing she needed a primary care clearance in order to have her surgical procedure, the Doctor offered to conduct a second examination of Plaintiff on the Date of Occurrence.

52. The Doctor made this offer to induce Plaintiff to remain in the office and in order to obtain access to her for the purpose of touching her for his sexual gratification.

53. The statements he made to her when he offered to perform such examination were implicitly false insofar as in the totality of the circumstances, they contained the clear implication that he would only perform such examination as was medically necessary.

54. The statements he made while offering to perform that examination were knowingly false, as manifested by the inappropriate sexual inquiries the Doctor had previously posited to the Plaintiff in his office, and by the fact that he insured that there was no assistant in the examination room, and because he directed the Plaintiff to unbuckle her pants before he committed the act in question.

55. The statements the Doctor made to the Plaintiff were false and fraudulent due to the deliberate omission of the fact that he intended to touch her intimate area, that such touching was not medically necessary, and that it was being performed solely for the Doctor's sexual gratification.

7

56. The preceding facts the Doctor omitted to disclose were not known to the Plaintiff beforehand, nor could they have been ascertained by her through the use of ordinary intelligence.

57. If the preceding facts had been disclosed, the Plaintiff would never have submitted to the examination.

58. But for the omission of the preceding facts, the Plaintiff would never have requested the doctor to give her the additional surgical clearance, nor would she have submitted to the second examination.

59. The statements, including the omissions, the Doctor made and/or failed to make to the Plaintiff were made in order to induce her to submit to his examination, and in order to place her in a vulnerable position where she would allow the offensive touching which she would never permit otherwise.

60. At that time and place, the Plaintiff reasonably believed that the Doctor was conducting a medical examination that was required so she could proceed with a surgical procedure she had scheduled.

61. At that time and place, the Plaintiff reasonably believed that the Doctor would only perform such an examination as was medically indicated and required.

62. At that time and place, the Plaintiff reasonably believed that the Doctor would not touch her person for his own sexual gratification.

63. The Plaintiff reasonably relied upon the statements the Doctor had made, and such reliance was objectively and subjectively reasonable and justifiable.

64. As a result of Plaintiff's reliance on the Doctor's statements, the Plaintiff rendered herself vulnerable to the offensive touching.

65.     As a proximate result of the said touching, the Plaintiff has suffered severe emotional and psychological distress, and certain pre-existing anxieties and other psychological pathologies she suffered from have been exacerbated and aggravated.

66.     The preceding allegations pertaining to the liability of the Corporation for the Doctor's conduct are incorporated by reference herein with the same force and effect as if fully set forth.

AS AND FOR A THIRD CAUSE OF ACTION
AGAINST BENJAMIN ZAREMSKI M.D., P.C.
NEGLIGENT RETENTION

67.     Plaintiff incorporates all the preceding allegations of this Complaint with the same force and effect as if fully set forth at length.

68.      Upon information and belief, at all times herein pertinent, the Doctor was the sole principal, director and shareholder of the Corporation.

69.     Upon information and belief, at all times herein pertinent, the Doctor owned all of the beneficial interest of the Corporation.

70.     Upon information and belief, at all times herein pertinent, the Doctor was solely responsible for making substantially all of the business decisions for the Corporation.

71.     Upon information and belief, at all times herein pertinent, the Doctor was solely responsible for making all the hiring and retention decisions and for designating which physicians would be permitted to practice medicine on behalf of the Corporation.

72.     On December 22, 2011, at his office at 510 East 80th Street in Manhattan, a woman whose name is known to the undersigned and to each of the Defendants, but undisclosed here in order to protect her privacy, had an office visit with the Doctor for cardiac care.

73. On December 22, 2011, after performing an echocardiogram, the Doctor announced that he was going to perform a rectal examination.

74. Despite the protestations of the patient, the Doctor digitally penetrated the woman's anus with unnecessary force, causing her substantial pain.

75. There was no conceivable justification for conducting a rectal examination in connection with the cardiac care then and there being rendered.

76. As a result of the aforesaid conduct, the patient sued the Doctor in the Supreme Court, New York County.

77. Upon information and belief, the matter was settled in exchange for the payment of a valuable consideration in exchange for a confidentiality clause in the settlement agreement.

78. Upon further information and belief, the complaint in the state court matter was sealed by the Court upon the application of the Doctor.

79. The Corporation was aware of the underlying conduct which precipitated the filing of that state court action, and was also aware of the settlement thereof, as well as the need of the Corporation and of the Doctor to conceal the underlying conduct from the public to the greatest extent possible.

80. The Corporation was therefore on full notice and was made fully aware of the Doctor's propensity to commit inappropriate acts with patients for his sexual gratification.

81. In light of the previous occurrence, the Corporation knew, or should have known, of the significantly increased likelihood that the Doctor would inappropriately touch other patients in the future.

82.     In light of the previous occurrence, the Corporation had actual knowledge of the Doctor's propensity to touch patients for his own sexual gratification in ways that were not medically indicated, necessary or appropriate.

83.     The Corporation failed in its duty to use reasonable care to protect its patients from the sexual propensities of the Doctor, insofar as it failed to remove the Doctor and/or keep him out of a position where he would have access to patients, hidden from view of an assistant and/or otherwise, for the purposes related to sexual gratification.

84.     Knowing of the Doctor's propensities and the risk that they posed to patients going forward, the Corporation allowed the Doctor to continue to act on its behalf in examining patients.

85.     Therefore, even if it be found that the Doctor was not acting within the scope of his employment with and/or within his agency to the Corporation on the Date of Occurrence when he inappropriately touched the Plaintiff, the Corporation is still liable to the Plaintiff for the Doctor's conduct, and all of the damage which flows from it.

*AS AND FOR A FOURTH CAUSE OF ACTION*
*AGAINST BENJAMIN ZAREMSKI M.D., P.C.*
*<u>NEGLIGENT SUPERVISION</u>*

86.     Plaintiff incorporates all the preceding allegations of this Complaint with the same force and effect as if fully set forth at length.

87.     Plaintiff specifically incorporates all the allegations of the preceding cause of action with the same force and effect as if fully set out at length.

88.      On the Date of Occurrence, the Corporation was negligent and careless in its supervision of the Doctor insofar as it permitted him to conduct the second examination of the Plaintiff without an assistant present.

89. If an assistant had been present, she/he would have known that vaginal touching was inappropriate and not medically indicated, and the Plaintiff would not have been subjected to the inappropriate conduct and/or contact.

90. But for this omission of supervision on the part of the Corporation, the Doctor would not have had the opportunity to touch the Plaintiff inappropriately.

91. The touching the Plaintiff suffered at the Doctor's hand was therefore proximately caused by the acts and/or omissions of the Corporation.

*AS AND FOR A FIFTH CAUSE OF ACTION*
*AGAINST BENJAMIN ZAREMSKI M.D., P.C.*
<u>*BREACH OF THE STANDARD OF CARE*</u>

92. Plaintiff incorporates all the preceding allegations of this Complaint with the same force and effect as if fully set forth at length.

93. Plaintiff specifically incorporates all the allegations of the preceding cause of action with the same force and effect as if fully set out at length.

94. The standard of care in the relevant medical community required that an assistant be present in the room when the Doctor was conducting an examination of a female patient, particularly in light of his history and propensity which was known to the Corporation.

95. If the Corporation's failure to insure that the Doctor had an assistant in the room while he was examining a female patient constitutes medical malpractice as opposed to ordinary negligence, the Plaintiff alleges that such failure on the Corporation's part constituted a departure from the appropriate standard of care.

96. Plaintiff further alleges that but for such departure from the standard of care, the Doctor would not have been able to touch the Plaintiff inappropriately.

12

97. The Doctor only had the opportunity to touch the Plaintiff inappropriately as a result of this departure from the standard of care on the part of the Corporation.

98. The harm which resulted from the Doctor's inappropriate touching of the Plaintiff was therefore proximately caused by the Corporation's departure from the standard of care.

*AS AND FOR A SIXTH CAUSE OF ACTION*
*AGAINST DR. BENJAMIN ZAREMSKI*
*LACK OF INFORMED CONSENT*

99. Plaintiff incorporates all the preceding allegations of this Complaint with the same force and effect as if fully set forth at length.

100. The Doctor failed to inform the Plaintiff what his examination would consist of before he touched her intimate area.

101. The Doctor failed to disclose the alternatives to palpating the Plaintiff's intimate area, and failed to disclose the foreseeable risks and benefits of his proposed examination procedure, failed to disclose how or why it was necessary or desirable to do this in order to safely give the Plaintiff the pre-operative clearance she had requested, and failed to disclose the information a reasonable physician in the circumstances would have disclosed in a manner which would have permitted the patient to make a knowledgeable evaluation. associated with the treatment that a reasonable medical provider would have disclosed under similar circumstances.

102. A reasonable medical provider would have advised the Plaintiff that no vaginal examination of any kind was necessary in order to obtain a cardiac or PCP clearance to perform a surgical procedure.

103. After having been given all of the aforesaid disclosures as required, no reasonable person in the same position would have consented to a vaginal examination of any kind.

13

104.    The Doctor, before touching the Plaintiff's genitalia, failed to obtain her informed consent.

105.    The lack of informed consent proximately caused the Plaintiff emotional distress and aggravated and exacerbated her pre-existing psychological issues.

*AS AND FOR A SEVENTH CAUSE OF ACTION*
*AGAINST DR. BENJAMIN ZAREMSKI AND*
*BENJAMIN ZAREMSKI M.D., P.C.*
*MEDICAL MALPRACTICE*

106.    Plaintiff incorporates all the preceding allegations of this Complaint with the same force and effect as if fully set forth at length.

107.    At the time the Doctor performed the act herein complained of, he professed to the Plaintiff that he was acting as an internist.

108.    Plaintiff alternatively alleges that at the time the Doctor performed the act herein complained of that he was acting as a cardiologist, and/or as an internist with a subspecialty in cardiovascular medicine or in cardiology.

109.    The Doctor was required to exercise that degree of care, skill and judgment expected of an average internist, average internist with a subspecialty in cardiovascular medicine, or an average cardiologist, (dependent upon the capacity in which the Doctor alleges he was then acting at the time), in the greater New York medical community at that time.

110.    The average internist, average internist with a subspecialty in cardiovascular medicine, or average cardiologist  in the relevant medical community would have appropriately exercised his/her judgment to determine that no vaginal examination of any kind was required to issue any type of surgical clearance.

111. The average primary care physician in the relevant medical community would have appropriately exercised his/her judgment to determine that no vaginal examination of any kind was required to issue any type of surgical clearance.

112. The Doctor failed to exercise such the minimally required judgment and discretion and refrain from performing any vaginal exam on the Date of Occurrence, and in fact, he proceeded to palpate the Plaintiff's intimate area.

113. As a proximate result of this failure of judgment, the Plaintiff suffered offensive contact.

114. As a proximate result of this offense contact by the Doctor, the Plaintiff has suffered and continues to suffer severe emotional distress.

*AS AND FOR AN EIGHTH CAUSE OF ACTION*
*AGAINST DR. BENJAMIN ZAREMSKI AND*
*BENJAMIN ZAREMSKI M.D., P.C.*
*INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS*

115. Plaintiff incorporates all the preceding allegations of this Complaint with the same force and effect as if fully set forth at length.

116. On the Date of Occurrence, in performing the inappropriate touching alleged above, which he knew was not medically indicated or appropriate, the Doctor intentionally conducted himself toward the Plaintiff in a manner so shocking and outrageous that it exceeded all reasonable bounds of decency.

117. On the Date of Occurrence, the Doctor committed the act alleged herein with the intent of gratifying his sexual desire, doing so with reckless disregard of the emotional consequences to the Plaintiff which would follow.

15

118. The act was even more outrageous because in performing it, the Doctor was abusing the trust that a patient places in her physician.

119. As a result of the Doctor's outrageous conduct, the Plaintiff continues to suffer emotional distress so severe that no reasonable person should be expected to endure it.

120. As a proximate result of this outrageous conduct, the Plaintiff has sustained, and continues to sustain, severe emotional stress and trauma, and she has suffered aggravation and exacerbation of the psychological sequellae of this and other sexual trauma which occurred previously.

121. The preceding allegations pertaining to the liability of the Corporation for the Doctor's conduct are incorporated by reference herein with the same force and effect as if fully set forth.

### AS AND FOR A NINTH CAUSE OF ACTION
### JOINT AND SEVERAL LIABILITY AS
### BETWEEN THE DEFENDANTS

122. Plaintiff incorporates all the preceding allegations of this Complaint with the same force and effect as if fully set forth at length.

123. This action falls within one or more of the exceptions set forth in NY CPLR §1602, and as such, Defendants are jointly and severally liable pursuant to the exceptions set forth in Article 16 of the CPLR.

124. Pursuant to CPLR §1602(2)(iv), Defendants are jointly and severally liable for plaintiff's damages, including but not limited to plaintiff's non-economic loss, irrespective of the provisions of CPLR §1601, by reason of the fact that Defendants owed Plaintiff a non-delegable duty of care and by reason of the doctrine of respondent superior.

16

125. Pursuant to CPLR §1602(7), Defendants are jointly and severally liable for Plaintiff's damages, including but not limited to Plaintiff's non-economic loss, irrespective of the provisions of CPLR §1601, by reason of the fact that Defendants acted with reckless disregard for the safety of others by the intentional acts and omissions.

126. Pursuant to CPLR §1602(11), Defendants are jointly and severally liable for plaintiff's damages, including but not limited to plaintiff's non-economic loss, irrespective of the provisions of CPLR §1601, by reason of the fact that Defendants acted knowingly or intentionally, and in concert, to cause the acts or failures upon which liability is based.

*AS AND FOR A TENTH CAUSE OF ACTION*
*AGAINST DR. BENJAMIN ZAREMSKI AND*
*BENJAMIN ZAREMSKI M.D., P.C.*
*DISCRIMINATION UNDER THE NEW YORK CITY HUMAN RIGHTS LAW*

127. Plaintiff incorporates all the preceding allegations of this Complaint with the same force and effect as if fully set forth at length.

128. The New York City Human Rights Law provides it shall be unlawful discriminatory practice:

> for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation:
>
> (1) Because of any person's actual or perceived race, creed, color, national origin, age, gender, disability, marital status, partnership status, sexual orientation, uniformed service or immigration or citizenship status, directly or indirectly: (a) To refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation; or (b) To represent to any person that any accommodation, advantage, facility or privilege of any such place or provider of public accommodation is not available when in fact it is available.

(2) Directly or indirectly to make any declaration, publish, circulate, issue, display, post or mail any written or printed communication, notice or advertisement, to the effect that: (a) Full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, facilities and privileges of any such place or provider of public accommodation shall be refused, withheld from or denied to any person on account of race, creed, color, national origin, age, gender, disability, marital status, partnership status, sexual orientation, uniformed service or immigration or citizenship status; or (b) The patronage or custom of any person is unwelcome, objectionable, not acceptable, undesired or unsolicited because of such person's actual or perceived race, creed, color, national origin, age, gender, disability, marital status, partnership status, sexual orientation, uniformed service or immigration or citizenship status.

129.    Defendants are a place or provider of public accommodation under the NYCHRL.

130.    Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8 §8-107(4)(a) by discriminating against Plaintiff based upon her gender.

131.    By reason of Defendants' discrimination, Plaintiff is entitled to all remedies available for violations of NYCHRL.

*AS AND FOR AN ELEVENTH CAUSE OF ACTION*
*AGAINST DR. BENJAMIN ZAREMSKI AND*
*DISCRIMINATION UNDER THE NEW YORK CITY HUMAN RIGHTS LAW*

132.    Plaintiff repeats, reiterates and reasserts all allegations contained in the preceding paragraphs of this complaint as if fully set forth herein at length.

133.    The New York City Administrative Code Title 8 §8-107(6) provides that "It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter, or to attempt to do so."

134.    Defendants violated the section cited herein by aiding, abetting, inciting, compelling, and coercing the above discriminatory and unlawful conduct.

*AS AND FOR A TWELFTH CAUSE OF ACTION*
*EMPLOYER LIABILITY*
*UNDER THE NEW YORK CITY HUMAN RIGHTS LAW*

135.    Plaintiff incorporates all the preceding allegations of this Complaint with the same

force and effect as if fully set forth at length.

136.    The New York City Administrative Code Title 8 §8-107(13) provides:

a. An employer shall be liable for an unlawful discriminatory practice based upon
the conduct of an employee or agent which is in violation of any provision of this
section other than subdivisions one and two of this section.

b. An employer shall be liable for an unlawful discriminatory practice based upon
the conduct of an employee or agent which is in violation of subdivision one or two
of this section only where:

        (1) the employee or agent exercised managerial or supervisory
responsibility; or

        (2) the employer knew of the employee's or agent's discriminatory conduct,
and acquiesced in such conduct or failed to take immediate and appropriate
corrective action; an employer shall be deemed to have knowledge of an employee's
or agent's discriminatory conduct where that conduct was known by another
employee or agent who exercised managerial or supervisory responsibility; or

        (3) the employer should have known of the employee's or agent's
discriminatory conduct and failed to exercise reasonable diligence to prevent such
discriminatory conduct.

137.    Due to the above provision, the entity defendant is liable under the NYCHRL.

*JURY DEMAND*

138.    Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, the Plaintiff hereby

demands trial by jury with respect to all issues so triable.

*PRAYER FOR RELIEF*

**WHEREFORE**, Plaintiff respectfully prays for judgment against the Defendant Benjamin Zaremski M.D., P.C. and the defendant Dr. Benjamin Zaremski, jointly and severally, upon each cause of action in which they are named as Defendants, as follows:

a.  Declaring that Defendants engaged in unlawful practices prohibited under the New York City Administrative Code, § 8-107, et seq. as well as any other statutes complained of herein;

b.  Ordering an injunction and order permanently restraining Defendants from engaging in such unlawful conduct;

c.  Awarding compensatory damages in an amount to be determined by the trier of fact;

d.  Awarding exemplary damages in an amount to be determined by the trier of fact;

e.  Awarding Plaintiff punitive damages under the New York City Human Rights Law;

f.  Awarding Plaintiff attorneys' fees, costs, disbursements, and expenses incurred in the prosecution of this action;

g.  Awarding pre- and post- judgment interest as provided by law; and

h.  For such other relief as may be fitting and proper in the judgment of this Court.

Dated:  New York, New York
      October 22, 2021

Respectfully submitted,
LAW OFFICES OF WILLIAM CAFARO

_____
By:    William Cafaro, Esq.

20

Amit Kumar, Esq.
*Attorneys for Plaintiff*
108 West 39th Street, Ste. 602
New York, New York 10018
(212) 583-7400
bcafaro@cafaroesq.com
AKumar@CafaroEsq.com